**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Diane T. Reichensperger,

Plaintiff,

v.

Election Systems &
Software, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1415 ADM/RLE

---

Lawrence R. Altman, Esq., Altman Law Office, Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

James A. Beitz, Esq., Hagerty, Johnson, Albrightson & Beitz, Minneapolis, Minnesota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

On September 19, 2001, the undersigned United States District Judge heard Defendant Election Systems & Software, Inc.'s ("Defendant") Motion for Summary Judgment [Doc. No. 29]. Defendant seeks summary judgment on Plaintiff Diane T. Reichensperger's ("Plaintiff") claims of discrimination based on gender, reprisal discrimination and constructive discharge, in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, *et. seq*. For the reasons articulated below, the Defendant's Motion is granted.

## II. BACKGROUND[1]

Defendant is engaged in the business of manufacturing and selling ballot-related computer software and hardware, as well as providing election-related services. On April 27,

---

[1] As required in the summary judgment context, the facts are reviewed in the light most favorable to Plaintiff.

FILED NOV 14 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

1998, Defendant hired Plaintiff as a ballot technology specialist. *See* Pl. Dep., at 13-14. Defendant paid her an annual salary of $33,000. *Id.* at 21. Plaintiff did not receive any commission.[2]

Guenter Holzer ("Holzer") supervised Plaintiff during her employment. *Id.* at 25. Douglas Sunde ("Sunde") and Steven Gagne ("Gagne") were responsible for providing Plaintiff with "hands-on" training. *Id.* at 62. When Plaintiff started, Holzer assigned Gagne the primary task of training her. Although Plaintiff felt she did not receive as much training as she would have preferred, she believed that she received "enough to get by." Pl. Dep., at 65. At no time did Sunde or Gagne refuse a specific request by Plaintiff for training. *See id.* at 65-66.

Sunde began working as a ballot technology specialist for Business Records Corporation ("BRC") in February, 1996. *See* Sunde Dep., at 5. Sunde has been working as a ballot technology specialist for Defendant since 1997, when it purchased BRC's business. *See id.*; Holzer Dep., at 49. The ballot tech job included creating ballots, providing customer support, providing on-site training for customers, providing on-site election day support, giving customer presentations, and acting as a liaison between developers. *See* Sunde Dep., at 34. In April, 1998, Defendant promoted Sunde to senior ballot technology specialist. *See* Beitz Aff., Ex. C.

Gagne began working as a ballot technology specialist for BRC in January, 1994. *See* Gagne Dep., at 10. In May, 1997, BRC promoted Gagne to senior ballot technology specialist. *See* Beitz Aff., Ex. E. Like Sunde, Gagne began his employment with Defendant when it purchased BRC in 1997.

---

[2] In January, 1998, prior to Plaintiff's employment, Defendant eliminated the commission and bonus structure for all new employees. *See* Holzer Dep., at 227.

As ballot technology specialists, both Sunde and Gagne received a base salary, plus a commission. *See* Sunde Dep., at 88; Beitz Aff., Exs. C, E. Defendant continued BRC's pay structure for former BRC employees until 1999, when commissions were phased out. *See* Sunde Dep., at 88; Gagne Dep., at 20; Holzer Dep., at 227. In the summer of 1998, Sunde and Gagne received laptop computers. *See* Pl. Dep., at 183. Plaintiff used a desktop computer.

On June 14, 1998, Defendant sent Plaintiff to Rhode Island to produce ballots for an election there. *Id.* at 53. Gagne accompanied Plaintiff for the first week of the assignment, which lasted until August. *Id.* at 50. One night while they were in Rhode Island, Gagne suggested that he and Plaintiff eat at a "Hooters" Restaurant. *Id.* at 56. Despite Plaintiff's objections, Gagne took her to eat at Hooters. *Id.* Thereafter, the working relationship between Plaintiff and Gagne deteriorated. Further exacerbating their relationship difficulties was Plaintiff's disapproval of Gagne's romantic affair with a married employee, Shelly Angen-Determan. *See* Pl. Dep., at 208.

During Plaintiff's tenure, she asked for additional training. Holzer supported Plaintiff's efforts as she learned from her mistakes while on the job. *Id.* at 135. Holzer created a training schedule for her to complete with Gagne. *See* Beitz Aff., Ex. L. However, Plaintiff's strained working relationship with Gagne impeded effective communication between them.

On May 14, 1999, Holzer met with Plaintiff to discuss job performance problems. *See* Pl. Dep., at 173-74, 197-99. Plaintiff had failed to complete a training program with Gagne. *Id.* at 176. Holzer told Plaintiff that "if [her] behavior problem didn't change he would have to do something about it." *Id.* at 174. Holzer assigned Sunde, instead of Gagne, to complete Plaintiff's training. *Id.* at 174, 198.

After the meeting with Holzer, Plaintiff went home, and later returned to tender her letter of resignation. *See* Pl. Dep., at 180; Beitz Aff., Ex. N. Defendant's Human Resources director, Mike Bauer, asked Plaintiff to reconsider her decision over the weekend. *See* Pl. Dep., at 201. Plaintiff choose not to rescind her resignation and her last day of employment was May 17, 1999.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant has the burden of showing that no genuine issue of material fact exists. *See Celotex*, 477 U.S. at 323. Once the movant meets its burden, the party opposing the motion may not rest upon mere allegations or denials, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a "scintilla of evidence" in support of the non-movant's position is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

### A. Sex discrimination

When construing claims brought under the MHRA, courts apply the law developed in federal cases arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17. *See Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999). Title VII provides

that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e- 2(a). Because Plaintiff's claim is based on indirect evidence of discrimination, the familiar *McDonnell Douglas* burden-shifting analysis applies. *See Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

The *McDonnell Douglas* framework first requires Plaintiff to establish a prima facie case of sex discrimination, by demonstrating that (1) she is a member of a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly-situated persons of the opposite sex. *See Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000). The parties do not dispute that Plaintiff is a member of a protected class and that she was qualified to perform her job. The contested issues are whether Plaintiff suffered any adverse employment action and whether Defendant treated similarly-situated males differently.

Plaintiff has failed to present evidence showing that she was treated differently than similarly-situated males. Plaintiff was not similarly-situated to either Sunde or Gagne. Both Sunde and Gagne were senior ballot technology specialists. While working for BRC, Sunde and Gagne trained with U.S. Elections on the Ballot Right software. *See* Bauer Dep., at 58-59. Sunde possessed several years of election industry experience. *See* Holzer Dep., at 34. Gagne had the most ballot layout experience in the company and he was responsible for ballot production. *Id.* at 33, 104-05. Conversely, Plaintiff was a new ballot technology specialist with

no prior relevant experience. Unlike Sunde and Gagne, Plaintiff did not earn the position of senior ballot technology specialist. Plaintiff's skill and experience was not similar to either Sunde or Gagne. Plaintiff never worked for BRC. Accordingly, she was not included in BRC's compensation system and did not receive commission as part of her salary.[3] Because Sunde and Gagne were not "similarly situated" to Plaintiff in all relevant respects, Plaintiff fails to establish a prima facie case of discrimination. *See LaCroix v. Sears Roebuck & Co.*, 240 F.3d 688, 694 (8th Cir. 2001).

Moreover, there is no evidence of the requisite adverse employment action. An adverse employment action must be demonstrated by a material employment disadvantage, such as a change in salary, benefits, or responsibilities. *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997). A plaintiff must establish a "materially adverse impact" on the terms or conditions of her employment. *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001). Working conditions that cause no materially significant disadvantage to the employee or disappointment with changes in one's employment situation do not rise to legally cognizable adverse employment actions. *Id.*

---

[3] To establish a prima facie case of wage discrimination based on unequal pay, a plaintiff must show that the defendant paid male workers more than she was paid for equal work in jobs that required equal skill, effort, and responsibility and were performed under similar conditions. *See* Equal Pay Act, 29 U.S.C. § 206(d); *see also McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 513 (8th Cir. 1995). Although Plaintiff alludes to an equal pay claim, she has not pled one. Moreover, there is insufficient evidence to create a genuine issue of material fact regarding such a claim. Plaintiff has failed to demonstrate that she possessed experience, training, education, and ability similar to Sunde and Gagne.

The record indicates that Plaintiff did not suffer demotion, diminution in her salary, or termination. Although Plaintiff was disappointed that Defendant did not provide her with a laptop computer and software upgrades, Defendant's decision to allocate its scarce computer resources[4] to its more experienced, senior ballot technology specialists is a legitimate business judgment. There is no evidence that this technology apportionment was a pretext for gender discrimination. The fact that Defendant's decisions may have caused inconvenience or unhappiness to Plaintiff does not convert them into material employment disadvantages. Absent such material disadvantages, there is no adverse employment action. *See Scusa v. Nestle USA Co., Inc.*, 181 F.3d 958, 969 (8th Cir. 1999).

Plaintiff also points to her poor working relationship with Gagne as evidence of an adverse employment action. However, allegations of ostracism by co-workers are not adverse employment actions. *See Scusa*, 181 F.3d at 969; *Manning v. Met. Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997). Generalized insinuations of hostility, disrespect, or personal animus from co-workers are insufficient to constitute a material employment disadvantage. *See Scusa*, 181 F.3d at 969. Thus, Plaintiff's personality conflict with Gagne cannot be the basis of her gender discrimination claim. Before Plaintiff quit, Holzer had assigned Sunde to be primarily responsible for providing additional training for her. Plaintiff has not produced evidence sufficient to raise a genuine issue of material fact regarding her claim of gender discrimination.

---

[4] Plaintiff's supervisor, Holzer, did not have a laptop, and his desktop computer was more antiquated than Plaintiff's. *See* Beitz Second Aff., Ex. TT.

**B. Reprisal Discrimination**

To establish a prima facie case of reprisal discrimination,[5] Plaintiff must show that she engaged in statutorily protected conduct, she suffered an adverse employment action, and the existence of a causal connection between the adverse action and the protected conduct. *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1173 (8th Cir. 2001); *Bogren v. Minnesota,* 236 F.3d 399, 407 (8th Cir. 2000); *Kiel v. Select Artifacts, Inc.*, 169 F.3d 1131 (8th Cir. 1999). Plaintiff has failed to set forth evidence creating a genuine issue of material fact concerning these elements.

Prior to the day she resigned, Plaintiff never complained that Defendant was discriminating against her because of her gender. *See* Pl. Dep., at 109-10. Because Plaintiff did not complain about gender discrimination before any alleged acts of retaliation occurred, her reprisal discrimination claim is defective. *See Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997) (noting that an incident cannot be an act of retaliation if it occurred before plaintiff complained about discrimination). Plaintiff's complaints to Defendant that she was not receiving adequate training are not statutorily protected activities. Because Plaintiff did not oppose an unlawful employment practice, she cannot meet her burden of demonstrating that she engaged in statutorily protected conduct. *See Genosky v. Minnesota*, 244 F.3d 989, 993 (8th Cir. 2001).

For the reasons discussed above, Plaintiff did not suffer any adverse employment action.

[5] The analysis of retaliation claims under the MHRA, Minn. Stat. § 363.01, subd. 7, is consistent with the ubiquitous *McDonnell-Douglas* burden shifting framework used under Title VII, 42 U.S.C. § 2000e-3(a). *See Hasnudeen v. Onan Corp.*, 552 N.W.2d 555, 556-57 (Minn. 1996).

*See supra*, at 6-7. Without proof of the requisite adverse employment action, Plaintiff's retaliation claim fails. *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 715 (8th Cir. 2000) ("Employment actions which do not result in changes in pay, benefits, seniority, or responsibility are insufficient to sustain a retaliation claim."). Moreover, Plaintiff cannot manufacture an adverse employment action from her disappointment with Holzer's review of her performance. *See Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999) (observing that a negative performance review does not in itself constitute an adverse employment action, because it has no tangible effect upon the recipient's employment); *Spears v. Missouri Dep't. of Corrections & Human Resources,* 210 F.3d 850, 854 (8th Cir. 2000) (holding that a negative review is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment). Summary judgment is granted on Plaintiff's reprisal discrimination claim.

**C. Constructive Discharge**

Lacking evidence of any adverse employment action, Plaintiff alleges that she was constructively discharged. Under Title VII, "[a] constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit." *Johnson v. Runyon*, 137 F.3d 1081, 1083 (8th Cir. 1998) (internal quotations omitted). "The conduct complained of must have been 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and additionally the plaintiff must 'subjectively perceive the environment to be abusive.'" *Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 354 (8th Cir. 1997) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The

employee's decision to resign must be reasonable in light of the circumstances. *Sowell*, 251 F.3d at 685. To act reasonably, "an employee has an obligation not to assume the worst and not to jump to conclusions too quickly." *Id.* (citations omitted). The employee must allow the "employer a reasonable opportunity to work out a problem." *Id.*

The decline of Plaintiff's working relationship with Gagne appears to have begun after he took her to eat at Hooters in Rhode Island. The Hooters restaurant chain's marketing scheme employs a "double entendre implicating the female anatomy." *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998). However, a single meal at such a restaurant does not create abusive working conditions. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000) (noting that inviting a member of the opposite sex to be part of a group going to eat at a Hooters restaurant is not in itself evidence of sexual harassment). The Hooters dinner does not rise to the level of a hostile work environment, even if Gagne's restaurant selection may evince "poor taste and a lack of professionalism." *Penry*, 155 F.3d at 1263.

Plaintiff points to the extramarital office affair between Gagne and Ms. Angen-Determan in support of her constructive discharge claim. Any effect their romance may have had on Plaintiff is not severe enough to create an abusive work environment for Plaintiff. Plaintiff's situation pales by comparison to *Kader v. Paper Software, Inc.*, 111 F.3d 337, 340 (2d Cir. 1997), where the Second Circuit held that although the employee suffered humiliation and stress while working in an office where the owner of the company was conducting a sexual relationship with the employee's own wife, he did not demonstrate the deliberate creation of intolerable

working conditions necessary for a constructive discharge claim. If Kader's situation did not constitute intolerable working conditions, Plaintiff's in this case certainly does not. *Cf.*, *Kader*, 111 F.3d at 340. Indeed, it is farfetched to believe that Gagne entered into a romantic relationship with Ms. Angen-Determan for the purpose of making Plaintiff's working conditions intolerable.

Further, Holzer's actions during his meeting with Plaintiff do not rise to the level of severe or pervasive conduct that forced her to quit. *See Rucker v. Runyon*, No. 96-3537, 1997 WL 703775, at *3 (N.D. Cal. Nov. 3, 1997), *aff'd*, 178 F.3d 1300 (9th Cir. 1999) (finding no objectively hostile or abusive work environment where supervisor called plaintiff a "dumb ass" and had given him several poor performance reviews). Discussing Plaintiff's work progress, Holzer said that "if [her] behavior problem didn't change he would have to do something about it." Pl. Dep., at 173-74. Receiving one negative performance review cannot rise to the level of an objectively hostile or abusive work environment if it does not constitute an adverse employment action. *Cf.*, *Cossette*, 188 F.3d at 972; *Spears*, 210 F.3d at 854. Plaintiff's decision to resign after her meeting with Holzer was not reasonable in light of the circumstances. At that time, Holzer had assigned Sunde, instead of Gagne, to be the one primarily responsible for completing Plaintiff's training. Later that same day, when presented with Plaintiff's letter, Bauer asked Plaintiff to reconsider her decision to resign.

Plaintiff quit without giving Defendant a reasonable opportunity to solve the problem of further training her in a manner that would avoid her personality conflict with Gagne. *See Coffman v. Tracker Marine*, 141 F.3d 1241, 1247 (8th Cir. 1998) (holding that if employee quits

without giving employer a reasonable chance to work out a problem, then employee has not been constructively discharged). There is no genuine issue of material fact regarding Plaintiff's claim of constructive discharge. Summary judgment is granted.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 29] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: November 13, 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*